UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ADAM WOOD, | * | |
|     Plaintiff, | * | |
| v. | * | Civil Action No. EA-25-1104 |
| UNITED STATES OF AMERICA, *et al.*, | * | |
| | * | |
|     Defendants. | | |

**MEMORANDUM OPINION**

Plaintiff Adam Wood, who is self-represented, initiated the above-captioned action on April 2, 2025, in which he asserts tort, constitutional, and statutory claims against Defendants United States of America and Federal Bureau of Investigation (FBI) Special Agents Paul Garaffo, Jared McCarthy, and John and Jane Does based on law enforcement action taken at Mr. Wood's home in 2024 and Mr. Wood's subsequent request for information from the FBI.[1] ECF No. 1. Pending before the Court is Defendants' motion to dismiss the Amended Complaint (ECF No. 40), which is fully briefed (ECF Nos. 48, 50). No hearing is necessary. Local Rule 105.6 (D. Md. Dec. 1, 2025). For the reasons set forth below, the motion is granted.

**I.  BACKGROUND**

    **A.  Factual Background[2]**

On February 6, 2024, Special Agent Garaffo applied for warrants to search Mr. Wood's residence and person, which were authorized by a United States Magistrate Judge of this Court.

---

[1] Plaintiff Adam Wood subsequently filed an Amended Complaint. ECF No. 32.

[2] Except where noted, this factual summary is drawn from the allegations in the Amended Complaint (ECF No. 32), which are accepted as true for the purposes of deciding this motion, as well as documents that are integral to the Amended Complaint and authentic. *Goines* v. *Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164-165 (4th Cir. 2016); *E.I. du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

ECF No. 40-1 at 2[3] (citing Criminal No. 24-mj-294-CDA-1 (D. Md.) (ECF No. 6); Criminal No. 24-mj-295 (D. Md.) (ECF No. 6)).  Issuance of these warrants was based on a finding of probable cause.  U.S. Const. amend. IV; Fed. R. Crim. P. 41.[4]  On February 7, 2024, federal agents from the FBI's Boston and Baltimore Field Offices executed the authorized search warrants on Mr. Wood's residence and person.  ECF No. 32 ¶ 15.  During the execution of these warrants, FBI agents pointed "M16 assault rifles equipped with laser aiming modules at [Mr. Wood], his two minor children, and his fiancée."  *Id.* at ¶ 16.  FBI agents then handcuffed Mr. Wood and "confined [him] to his dining room for over two hours," while "agents forcibly confined [his] fiancée and children to an FBI van for approximately 30 minutes."  *Id.* at ¶ 20.

Mr. Wood is "a national security professional with years of government, sports and entertainment industry, and international institution collaboration."  *Id.* at ¶ 11.  Mr. Wood "had been coordinating efforts to support the security of [the] United States Government and its citizens since 2021."  *Id.* at ¶ 22.  Prior to requesting and receiving the search warrants, Special Agent Garaffo ignored Mr. Wood's long history of national security work and failed to conduct the necessary investigation.  *Id.* at ¶¶ 22–30.  FBI agents "fail[ed] to research [Mr. Wood's] company website," "military and education[al] background," "public media releases," and "frequent engagements at the Pentagon . . . and other cleared spaces with interagency partners."  *Id.* at ¶¶ 25–27.  Any search of Mr. Wood's credentials would have revealed years of "active[] engag[ement] in sanctioned activities with senior military officials and senior executives within the intelligence community," including "former members of President Trump and President

---

[3] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

[4] "After receiving an affidavit or other information, a magistrate judge . . . must issue the warrant if there is probable cause to search for and seize," among other things, "evidence of a crime"; "contraband, fruits of crime, or other items illegally possessed"; or "property designed for use, intended for use, or used in committing a crime."  Fed. R. Crim. P. 41(c), (d)(1).

2

Biden's National Security Council" and other government intelligence agencies. *Id.* at ¶¶ 24–26. The "raid was predicated on unfounded speculation, demonstrably false assumptions, and zero corroboration from FBI Headquarters," other government entities, or "any qualified subject matter experts with whom [Mr. Wood] had been" working. *Id.* at ¶ 22.

Further, "as early as August 2023," "FBI personnel or affiliates unlawfully disclosed information regarding [Mr. Wood] to unauthorized civilians," which resulted in the cancelation of business contracts and the withdrawal of potential investors and "cost [Mr. Wood's] company $2 million in capital." *Id.* at ¶¶ 32–34. As a result of the FBI's actions, Mr. Wood's "professional trajectory and business operations were irreparably disrupted" and "[m]ultiple U.S. government agencies abandoned planned contracts and pilots," resulting in the "collapse[]" of Mr. Wood's business. *Id.* at ¶¶ 36–38. Mr. Wood "and his family members suffer from anxiety, distress, and loss of trust in government institutions." *Id.* at ¶ 44.

On March 18, 2025, Mr. Wood submitted a formal request for information to the FBI and the United States Department of Justice (DOJ), seeking records relating to the February 7, 2024 law enforcement action and other matters. *Id.* at ¶¶ 10, 156. "The statutory response period expired without a lawful determination." *Id.* at ¶ 10.

B.   **Procedural History**

On October 1, 2024, Mr. Wood submitted a Standard Form 95 Claim for Damage, Injury, or Death (SF-95 Claim) in which he alleged tortious interference; civil rights violations; violations of the Fourth Amendment to the United States Constitution and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; and claimed $33,475,000. ECF No. 40-2 at 3, 7.[5] By letter dated November 20, 2024, the Torts Branch of DOJ's Civil Division

---

[5] Ordinarily a court may not consider matters outside the pleadings when reviewing a motion to dismiss without converting it into a motion for summary judgment. *United States ex rel. Oberg* v. *Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014);

3

advised Mr. Wood that DOJ would forward his SF-95 Claim, which it received on October 4, 2024, to the FBI because the alleged claims involved that agency. ECF No. 40-2 at 6. This letter further advised that "[a]ll further communication on this matter should be directed to the FBI." *Id.* By letter dated January 30, 2025, the FBI informed Mr. Wood that it had received his SF-95 Claim. *Id.* at 47. Mr. Wood initiated the instant action on April 2, 2025. ECF No. 1.

The Amended Complaint, filed on June 30, 2025, pleads thirteen counts. ECF No. 32. Counts I through VII allege violations of the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*, based on alleged negligence, trespass, battery, assault, false arrest, false imprisonment, and abuse of process. *Id.* at ¶¶ 45–108. Counts VIII through X allege violations of the Fourth and Fifth Amendments under *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (*Bivens*). *Id.* at ¶¶ 109–136. Count XI alleges a violation of the Privacy Act of 1974 (Privacy Act), as amended, 5 U.S.C. § 552a. *Id.* at ¶¶ 137–144. Count XII alleges a promissory estoppel/detrimental reliance claim. *Id.* at ¶¶ 145–153. Count XIII alleges a violation of the Freedom of Information Act (FOIA), 5 U.S.C. § 552. *Id.* at ¶¶ 154–161. Mr. Wood seeks $54,850,000 in damages and various forms of equitable relief. *Id.* at 21.

---

Fed. R. Civ. P. 12(d). The Court may, however, consider documents attached to the motion to dismiss, so long as they are integral to the complaint and authentic. *Goines*, 822 F.3d at 166; *Robinson* v. *American Honda Motor Co.*, 551 F.3d 218, 222-223 (4th Cir. 2009). A document is integral to the complaint if "by its very existence, and *not the mere information it contains*, [it] gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc.* v. *Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (internal quotation marks and citation omitted).

Further, as discussed herein, *see*, II.A.1., *infra*, a factual challenge to subject matter jurisdiction permits the court to "decide disputed issues of fact" with respect to the court's jurisdiction. *Kerns* v. *United States*, 585 F.3d 187, 192 (4th Cir. 2009). "In that circumstance, the court 'may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Tall* v. *Maryland Developmental Disabilities Admin.*, Civil Action No. ELH-15-3811, 2016 WL 3459854, at *4 (D. Md. June 24, 2016) (quoting *Velasco* v. *Government of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)).

## II. DISCUSSION

Defendants move to dismiss the Amended Complaint in its entirety, raising several arguments in support of their motion. ECF No. 40. First, Defendants assert that this Court lacks subject matter jurisdiction over Mr. Wood's FTCA claims because he failed to comply with the administrative prerequisites for filing suit or, in the alternative, that these claims fall within the FTCA's discretionary function exception. ECF No. 40-1 at 2. Second, Defendants argue that Mr. Wood fails to state a claim under both *Bivens* and the Privacy Act. *Id.* Finally, Defendants contend that Mr. Wood's FOIA claim must be dismissed because he did not file suit against the proper defendant. *Id.* The applicable standards of review and each of the Defendants' arguments are addressed in turn below.[6]

---

[6] Defendants also contend that the claims against Federal Bureau of Investigation Special Agents Paul Garaffo and Jared McCarthy must be dismissed because Mr. Wood failed to properly serve them. ECF No. 40-1 at 2. Specifically, Defendants take issue with the fact that Mr. Wood mailed the summons and complaint via certified mail, rather than with restricted delivery. *Id.* at 25–26.

Federal Rule of Civil Procedure 4(i)(3) states that in order "[t]o serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf . . . , a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g)." Fed. R. Civ. P. 4(i)(3). Rule 4(e) provides that service on an individual may be effected by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located[.]" Fed. R. Civ. P. 4(e)(1). Therefore, service of summons on Special Agents Garaffo and McCarthy must be effectuated in accordance with Maryland law. Maryland Rule 2-121(a)(3) requires, among other things, that service by mail be effectuated through restricted delivery. The plaintiff bears the burden of establishing valid service. *Maid to Perfection Glob., Inc.* v. *Ensor*, Civil Action No. RDB-09-0958, 2010 WL 1254194, at *1 (D. Md. Mar. 29, 2010). Nevertheless, where, as here, there is actual notice of the suit, courts will liberally construe Rule 4. *Armco, Inc.* v. *Penrod-Stauffer Bldg. Sys. Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984); *O'Meara* v. *Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006).

While the Court does not excuse Mr. Wood's failure to comply with Maryland Rules regarding service, the "Court takes note that (1) the Defendants indisputably have actual notice of this lawsuit, (2) the Defendants have not identified any prejudice stemming from [Mr. Wood's] method of service, and (3) the Defendants do not take issue with any aspect of service except the lack of restricted delivery." *Simmons* v. *TransUnion, LLC*, 712 F. Supp. 3d 629, 636-637 (D. Md. 2024). Further, "[w]hen there is actual notice, every technical violation of the rule

5

A.  **Standard of Review**

1.  Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute . . ., which is not to be expanded by judicial decree." *Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted); *see also Strawn* v. *AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008) ("We begin with the undergirding principle that federal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations."). Therefore, "if Congress has not empowered the federal judiciary to hear a matter, then the case must be dismissed." *Home Buyers Warranty Corp.* v. *Hanna*, 750 F.3d 427, 432 (4th Cir. 2014); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."). The limited jurisdiction of federal courts places the burden on the party asserting a claim to allege—and, when challenged, establish—the Court's subject matter jurisdiction over the pending claim. *Home Buyers Warranty Corp.*, 750 F.3d at 432.

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a claim for lack of subject matter jurisdiction. There are two types of subject matter jurisdiction challenges, those that "attack the complaint on its face" and those that "attack the existence of subject matter jurisdiction in fact." *Mortensen* v. *First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). When presented with a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to

---

or failure of strict compliance may not invalidate the service of process." *Armco, Inc.*, 733 F.2d at 1089; *see also Xerox Corp.* v. *Kidd Int'l Home Care, Inc.*, Civil Action No. PX-21-1058, 2021 WL 4641558, at *2 (D. Md. Oct. 7, 2021) (collecting cases). The undersigned therefore declines to invalidate service of process and will instead address the merits of Defendants' substantive arguments in favor of dismissal.

6

invoke subject matter jurisdiction." *Kerns* v. *United States*, 585 F.3d 187, 192 (4th Cir. 2009). Thus, the plaintiff that faces a facial challenge to subject matter jurisdiction "is afforded the same procedural protection as . . . under a Rule 12(b)(6) consideration." *Adams* v. *Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A factual challenge, however, permits the court to "go beyond the allegations of the complaint." *Id.*; *see also Evans* v. *United States*, 105 F.4th 606, 615 (4th Cir. 2024) ("Where a defendant challenges the factual predicate of subject-matter jurisdiction, the district court need not assume the truth of the allegations, may decide disputed issues of fact, and may venture outside of the pleadings to resolve the challenge.").

          2.        <u>Federal Rule of Civil Procedure 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). It is fundamental that the "purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards* v. *City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard is designed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). When evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences from the facts in favor of the plaintiff to determine if the plaintiff is entitled to the legal remedy sought. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *E.I. du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). The same does not hold true for legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. To determine whether the Rule 8(a)(2) pleading standard is met, the court separates the complaint's legal

7

conclusions from the factual allegations. *A Soc'y Without a Name* v. *Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

A complaint does not need to contain "detailed factual allegations" to satisfy the Rule 8(a)(2) pleading standard, but it must have "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must have "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard falls somewhere in between "probability," which is not required, and "sheer possibility," which is insufficient. *Id.*; *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**B.     Federal Tort Claims Act Claims (Counts I-VII)**

"Under settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued." *United States* v. *Dalm*, 494 U.S. 596, 608 (1990) (internal quotation marks and citation omitted); *Webb* v. *United States*, 66 F.3d 691, 693 (4th Cir. 1995). A sovereign immunity waiver "must be unequivocally expressed in statutory text" and it will "be strictly construed, in terms of its scope, in favor of the sovereign." *Lane* v. *Pena*, 518 U.S. 187, 192 (1996); *Welch* v. *United States*, 409 F.3d 646, 650-651 (4th Cir. 2005). Accordingly, any ambiguities must be construed in favor of immunity and exceptions to the conditions upon which the United States consents to be sued will not be implied. *United States* v. *Williams*, 514 U.S. 527, 531 (1995); *Lehman* v. *Nakshian*, 453 U.S. 156, 161 (1981).

The FTCA provides, in pertinent part, that the "United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Thus, the "FTCA effects a limited waiver of the United States' sovereign immunity for 'personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of [their] office or employment.'" *Welch*, 409 F.3d at 651 (quoting 28 U.S.C. § 1346(b)(1)). The United States cannot "be sued in tort except as permitted by the FTCA." *Hart* v. *Casey*, Civil Action No. GJH-22-1216, 2022 WL 17989577, at *2 (D. Md. Dec. 28, 2022).

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil* v. *United States*, 508 U.S. 106, 113 (1993). "This administrative exhaustion requirement contains three elements," each of which is jurisdictional. *Estate of Van Emburgh by & through Van Emburgh* v. *United States* (*Van Emburgh*), 95 F.4th 795, 801 (4th Cir. 2024). "First, a plaintiff must 'present [their] claim to the appropriate Federal agency[.]'" *Id.* (quoting 28 U.S.C. § 2675(a)) (alterations in original). Importantly, for the purposes of this first requirement, "[a] claim shall be presented to the Federal agency *whose activities gave rise to the claim*." 28 C.F.R. § 14.2(b)(1) (emphasis added). If the claim is initially presented to an agency whose actions did not give rise to the claims at issue, that agency must transfer it to the proper agency. *Id.* "A claim shall be presented as required" for administrative exhaustion "as of the date it is received by the appropriate agency." *Id.*

"Second, when a plaintiff presents their claim to the agency, the plaintiff must state the sum they are seeking for their claim." *Van Emburgh*, 95 F.4th at 801. Subject to limited exceptions not applicable here, a subsequent civil action "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency." 28 U.S.C. § 2675(b). "Third, the plaintiff must wait either for the claim to be 'finally denied by the agency' or for the

9

agency to fail 'to make final disposition of [the] claim within six months after it is filed.'" *Van Emburgh*, 95 F.4th at 801 (quoting 28 U.S.C. § 2675(a)) (alteration in original).  Failure to satisfy these three prerequisites to suit deprives the Court of subject matter jurisdiction over the FTCA claim.  *McNeil*, 508 U.S. at 111-113; *Kielwien* v. *United States*, 540 F.2d 676, 679 (4th Cir. 1976).

Here, Mr. Wood has not satisfied the jurisdictional prerequisites to suit.  Mr. Wood's FTCA claims arise from the actions of FBI agents during the February 7, 2024 search warrant execution.  ECF No. 32.  Under the governing regulations, the proper agency to adjudicate Mr. Wood's administrative claim was the FBI.  Mr. Wood first submitted his SF-95 Claim to DOJ on October 1, 2024.  ECF No. 40-2 at 7–8.  By letter dated November 20, 2024, DOJ advised Mr. Wood that his claim would be forwarded to the FBI.  *Id.* at 6.  Assuming the claim was transferred the same day DOJ issued its letter, the FBI had at least until May 20, 2025, to make a final disposition of Mr. Wood's administrative claim before Mr. Wood could file suit.[7]  Mr. Wood's initiation of this action on April 2, 2025, was premature, and the Court therefore lacks subject matter jurisdiction over his FTCA claims.

Even if DOJ were the proper agency for purposes of administrative exhaustion, there are other deficiencies that require dismissal of Mr. Wood's FTCA claims.  First, the scope of the claims asserted and relief sought in this action extend beyond what Mr. Wood identified in his administrative claim.  Mr. Wood's SF-95 Claim alleges only two of the seven FTCA claims advanced in his Amended Complaint.[8]  *Lewis* v. *United States*, Civil Action No. DKC-22-2899,

---

[7] As noted previously, *see* I.B., *supra*, the FBI did not acknowledge receipt of Mr. Wood's SF-95 Claim until January 30, 2025.  ECF No. 40-2 at 47.

[8] This same deficiency bars Count XII of the Amended Complaint, in which Mr. Wood seeks "equitable relief in the form of promissory estoppel/detrimental reliance to prevent injustice arising from government misconduct."  ECF No. 32 ¶¶ 4, 146-153.  The only possible mention of promissory estoppel in Mr. Wood's administrative claim are his assertions of

10

2024 WL 895112, at *3 (D. Md. Feb. 29, 2024) (dismissing FTCA claims for lack of subject matter jurisdiction where the plaintiff failed to identify claims in the administrative claim). Further, the monetary damages Mr. Wood seeks in this action are greater than the amount of his administrative claim, which is impermissible. 28 U.S.C. § 2675(b); *compare* ECF No. 32 at 21 (seeking $54,850,000 in damages) *with* ECF No. 40-2 at 7 (claiming $33,475,000).

Second, Mr. Wood has not carried his burden of plausibly alleging that the discretionary function exception found in 28 U.S.C. § 2680(a) does not apply to his claims.[9] *E.g.*, *Wood* v. *United States*, 845 F.3d 123, 127 (4th Cir. 2017); *Seaside Farm, Inc.* v. *United States*, 842 F.3d 853, 857 (4th Cir. 2016). To meet this burden, a plaintiff must plausibly allege that the challenged action (1) involved no element of judgment or choice and (2) was not based on public policy considerations. *E.g.*, *Wood*, 845 F.3d at 128; *Pride* v. *United States Dep't of the Navy*,

---

"tortious interference with business relations" and "tortious interference with contractual relations." ECF No. 22-2 at 37–38. Even if this generous reading were enough to satisfy the administrative exhaustion requirement, the FTCA does not waive sovereign immunity for claims arising out of "interference with contract rights." 28 U.S.C. § 2680(h).

The Court has a "duty to construe *pro se* filings liberally." *Justus* v. *Clarke*, 78 F.4th 97, 111 (4th Cir. 2023), *cert. denied sub nom.*, 144 S. Ct. 1096 (2024). This liberal construction "allow[s] for the development of a potentially meritorious case," *Cage* v. *NASA Goddard Space Flight Ctr.*, Civil Action No. PX-18-3355, 2019 WL 3841928, at *3 (D. Md. Aug. 14, 2019), but it does not transform the Court into an advocate, *Thurman* v. *Robinson*, 51 F.3d 268 (Table); 1995 WL 133350, at *3 (4th Cir. 1995). The Court will therefore "read a *pro se* pleading to state a claim if possible from the facts available, but it will not rewrite the complaint to include claims that were never presented." *Lewis* v. *United States*, Civil Action No. DKC-21-2387, 2022 WL 3716544, at *2 (D. Md. Aug. 29, 2022) (internal quotation marks and citation omitted). And the Court "cannot ignore a clear failure to allege facts setting forth a cognizable claim." *Cage*, 2019 WL 3841928, at *3; *see also Russell* v. *Russel Motor Cars, Inc.*, 28 F. Supp. 3d 414, 418 (D. Md. June 18, 2014) ("[L]iberal construction does not absolve Plaintiff from pleading a plausible claim.") (internal citations omitted). Because even a liberal construction of Mr. Wood's promissory estoppel allegation does not transform it into a potentially meritorious claim, the Court must dismiss it.

[9] The United States' waiver of sovereign immunity under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, does not include "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2680(a).

11

No. 319CV00363RJCDCK, 2021 WL 4261515, at *3 (W.D.N.C. Sept. 20, 2021). The Amended Complaint includes no allegations that the actions at issue were somehow compelled or without a basis in public policy considerations. *See generally* ECF No. 32. Accordingly, Counts I through VII of Mr. Wood's Amended Complaint must be dismissed for lack of subject matter jurisdiction.

    C.    ***Bivens* Claims (Counts VIII-X)**[10]

In 1971, the Supreme Court decided *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics* and held that an individual may bring a cause of action for damages against a federal official "acting under color of [ ] authority" based on a violation of the United States constitution. 403 U.S. at 389. *Bivens* involved a Fourth Amendment violation. *Id.* "In the decade that followed, the Court recognized what has come to be called an implied cause of action in two cases involving other constitutional violations," one involving a Fifth Amendment gender discrimination claim and the other involving an Eighth Amendment medical treatment claim. *Ziglar* v. *Abbasi*, 582 U.S. 120, 131 (2017) (citing *Carlson* v. *Green*, 446 U.S. 14 (1980) and *Davis* v. *Passman*, 442 U.S. 228 (1979)). Subsequently, "the Court adopted a far more cautious course before finding implied causes of action," and "the *Bivens* remedy is now a disfavored judicial activity." *Ziglar*, 582 U.S. at 132, 135 (internal quotation marks and citation omitted); *see also Tun-Cos* v. *Perrotte*, 922 F.3d 514, 521 (4th Cir. 2019) ("In the almost 40

---

[10] The United States has not waived its sovereign immunity with respect to constitutional torts, so any *Bivens* claim must be asserted against government officials in their individual rather than their official capacities. *E.g.*, *Federal Deposit Ins. Corp.* v. *Meyer*, 510 U.S. 471, 477 (1994); *Everett* v. *Francis*, Civil Action No. 5:07CV135, 2009 WL 2971359, at *3 (N.D. W. Va. Sept. 16, 2009), *aff'd*, 390 Fed. Appx 266 (4th Cir. 2010). "The Supreme Court has explained that permitting recovery against a federal agency would undermine the purpose of *Bivens*, which 'is to deter the *officer*,' and would implicate 'federal fiscal policy,' something that is better suited for Congress." *Goss* v. *United States*, Civil Action No. EA-24-406, 2024 WL 4135471, at *5 (D. Md. Sept. 10, 2024) (quoting *Meyer*, 510 U.S. at 485-486 (emphasis in original)). Thus, to the extent Mr. Wood asserts his *Bivens* actions against the United States, those claims must be dismissed for lack of jurisdiction.

12

years since *Carlson* . . . the Court has declined to countenance *Bivens* actions in *any* additional context." (emphasis in original)) (collecting cases). Analysis of whether a *Bivens* remedy is available against federal officials involves a two-step inquiry. "First, courts must inquire whether a given case presents a 'new *Bivens* context.'" *Tun-Cos*, 922 F.3d at 522. If the context is different from that in any of the three recognized cases, the court must then "evaluate whether there are 'special factors *counseling hesitation* in the absence of affirmative action by Congress.'" *Id.* (emphasis in original) (quoting *Ziglar*, 582 U.S. at 136).

      Here, Mr. Wood raises three constitutional claims against Defendants: (1) a violation of his Fourth Amendment right "by procuring and executing a search and seizure warrant based on a warrant obtained through material falsehoods and reckless omissions" (ECF No. 32 ¶ 111); (2) a violation of his Fifth Amendment right to due process by "subjecting him to custodial interrogation without advising him of his constitutional rights to remain silent and to consult with counsel" (*id.* at ¶ 121); and (3) a violation of his Fifth Amendment right to equal protection by subjecting him to "disparate treatment without a legitimate governmental purpose" and by "target[ing] [him] for investigation, raid, and enforcement action based on his professional association with [] an Israeli[-]Australian national" (*id.* at ¶ 129).

      Mr. Wood's Fourth Amendment claim arises in a different factual context than that recognized in *Bivens* because the searches and seizures Mr. Wood challenges were conducted pursuant to lawful warrants supported by probable cause. *Annappareddy* v. *Pascale*, 996 F.3d 120, 135 (4th Cir. 2021) ("What *Bivens* involved was the Fourth Amendment right to be free of unreasonable *warrantless* searches and seizures.") (emphasis in original). As the United States Court of Appeals for the Fourth Circuit has explained, this difference is "especially significant because [it] mean[s] that proving the claim[ ] here would require a different type of showing than did the claims in *Bivens*, one that would pose a greater risk of intruding on the investigatory and

13

prosecutorial functions of the executive branch." *Id.* at 136. Importantly, "*Bivens* did not require this type of fact-checking and conscience-probing, . . . which can, as the Supreme Court has warned, impose substantial costs." *Id.* (internal citations omitted).

Mr. Wood's Fifth Amendment due process and equal protection claims also fail. First, "*Bivens* has never been extended to a Fifth Amendment due process claim." *Id.* at 134 (internal citation omitted). Second, Mr. Wood's claim that he was unfairly subjected to investigation because of his association with an Israeli-Australian national is far afield of the equal protection remedy recognized in *Davis*. 442 U.S. 228 at 234-235. The Fourth Circuit has cautioned that "after-the-fact inquiries" into the conduct of federal officers "pose the kind of 'risk of intrusion on executive-branch authority to enforce the law and prosecute crimes' that counsels against implying a cause of action for damages." *Annappareddy*, 996 F.3d at 134-135 (quoting *Farah* v. *Weyker*, 926 F.3d 492, 501 (4th Cir. 2019)). Counts VIII through X are therefore dismissed.

### D. Privacy Act Claim (Count XI)

The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records . . . to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless the disclosure of the record" is permitted by an exception. 5 U.S.C. § 552a(b). Civil actions under the Privacy Act are properly instituted against federal agencies, not individuals or the United States, as sovereign. 5 U.S.C. § 552a(g)(1) (authorizing suit against an agency); *Walker* v. *Gambrell*, 647 F. Supp. 2d 529, 536 (D. Md. 2009) ("[C]ivil actions under the [Privacy] Act are properly commenced only against agencies, not individuals."). Accordingly, Mr. Wood's Privacy Act claim fails because he has not filed suit against a federal agency.

Further, Mr. Wood has not plausibly alleged a Privacy Act claim. To state a cause of action under the Privacy Act, Mr. Wood must plausibly allege that:

14

> (1) the information at issue is covered by the Privacy Act as a "record" contained in a "system of records;" (2) the agency "disclosed" the information; (3) the disclosure had an "adverse effect" on the Plaintiffs (an element which separates itself into two components: (a) an adverse effect standing requirement and (b) a causal nexus between the disclosure and the adverse effect); and (4) the disclosure was willful and intentional.

*Doe* v. *Herman*, No. CIV. A. 297CV00043, 1999 WL 1000212, at *8 (W.D. Va. Oct. 29, 1999), *report and recommendation adopted in part*, 2000 WL 34204432 (W.D. Va. July 24, 2000), *aff'd in part, rev'd in part and remanded sub nom*, 306 F.3d 170 (4th Cir. 2002), *aff'd*, 540 U.S. 614 (2004).

Here, the facts Mr. Wood alleges to establish a Privacy Act violation are insufficient to raise his right to relief above the speculative level. *Twombly*, 550 U.S. at 555. The Amended Complaint alleges that at some point between August 2023 and the February 7, 2024 law enforcement action, unnamed "FBI personnel or affiliates unlawfully disclosed information regarding a sealed national security investigation involving [Mr. Wood] to unauthorized civilians," causing him "substantial" and "irreparable" harm. ECF No. 32 ¶¶ 139–40, 143. The Amended Complaint does not specifically identify who disclosed the information, to whom it was disclosed, what the disclosure revealed, or how it caused the harm alleged. The Amended Complaint even falls short of *Twombly*'s insufficient "formulaic recitation" standard since it does not assert that the disclosed information constituted a "record" contained in a "system of records" and makes no claim that the disclosure was willful or intentional. *Twombly*, 550 U.S. at 555; 5 U.S.C. § 552a. This claim must therefore be dismissed as well.

E.  **Freedom of Information Act Claim (Count XIII)**

FOIA "authorizes district courts to 'enjoin the *agency* from withholding agency records' and does not make any provision for suits against agency employees." *Emesowum* v. *National Security Agency*, Civil Action No. BAH-24-0360, 2025 WL 847905, at *4 (D. Md. Mar. 18,

15

2025) (quoting 5 U.S.C. § 552(a)(4)(B)) (emphasis in original). "Because FOIA 'concern[s] the obligations of agencies as distinct from individual employees in those agencies,' 'no cause of action exists' as to . . . individual defendants." *Id.* (quoting *Martinez* v. *Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006)). Because Mr. Wood has not filed suit against a federal agency, his FOIA claim must be dismissed, as it cannot be sustained against the United States or the FBI agents in their individual capacities.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 40) is granted, and all of Mr. Wood's claims advanced in the Amended Complaint (ECF No. 32) are dismissed. A separate Order follows.

Date: February 5, 2026                  /s/
                                                         Erin Aslan
                                                         United States Magistrate Judge